UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Herman Jackson, Civ. File No. 01-2026 (PAM/RLE)

Plaintiff,

v. **MEMORANDUM AND ORDER**

Flint Ink North American Corporation,
a/k/a Flint Ink Corporation,

Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Court grants Defendant's Motion.

**BACKGROUND**

Plaintiff Herman Jackson was employed for 17 months at the South St. Paul plant of Defendant Flint Ink North American Corporation, also known as Flint Ink Corporation ("Flint Ink"). During his tenure at Flint Ink, Jackson was reprimanded or warned for no fewer than 20 violations of company policy. Most of the violations concerned unexcused absences or abuse of breaks. Jackson's employment was terminated three times. The first two times, the union grieved the termination and Flint Ink agreed to reinstate Jackson. The final termination, and the one at issue in this case, occurred on July 9, 1999. Jackson and the union again grieved this termination but Flint Ink denied the grievance. The matter was then

FILED APR 0 7 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD APR 0 7 200
DEPUTY CLERK

presented to an arbitrator. In his ruling, the arbitrator found that Flint Ink had sufficient cause to terminate Jackson's employment and denied the grievance.

While the arbitration was pending, Jackson filed a charge of discrimination with the Minnesota Department of Human Rights ("MDHR"). This charge was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). The MDHR found no probable cause for Jackson's allegations, and reaffirmed this decision at Jackson's request on January 5, 2001. Jackson then pursued his allegations with the EEOC. The EEOC also found that the evidence did not establish a violation of Title VII and issued Jackson a right-to-sue letter on August 14, 2001. Jackson commenced the instant lawsuit on October 18, 2001.

In his Complaint, Jackson claims that Flint Ink: (1) discriminated against him on account of his race; (2) maintained a racially hostile work environment; and (3) retaliated against him for reporting the racially hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the Minnesota Human Rights Act, Minn. Stat. §§ 363 et seq. ("MHRA").

**DISCUSSION**

**A. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d

743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Inadmissible hearsay evidence, however, may not be used to defeat a motion for summary judgment. Fireman's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993). In employment discrimination cases, the Eighth Circuit has cautioned that summary judgment should be granted sparingly. Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994).

**B. Statute of Limitations**

Flint Ink argues that Jackson's MHRA claims must be dismissed as untimely. Section 363.14 of the Minnesota Statutes provides that a civil action seeking redress for violations of the MHRA may be brought "within 45 days after receipt of notice that the commissioner has reaffirmed a determination of no probable cause . . . ." Minn. Stat. § 363.14,

subd. (1)(a)(2). The instant lawsuit was filed more than nine months after Jackson received notice that the MDHR reaffirmed its no probable cause determination.

Jackson responds that, because his charge was cross-filed with the EEOC and the EEOC did not issue him a right-to-sue letter until August, his claims were timely filed. A complaint alleging violations of Title VII must be brought within 90 days of the EEOC's issuance of a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(1).

Even assuming that Jackson's MHRA claims were held in abeyance between the time the MDHR issued its no probable cause finding and the time the EEOC issued the right-to-sue letter, Jackson's MHRA claims are still untimely. The right-to-sue letter was issued on August 14, 2001. If the Court considers the right-to-sue letter to be the no probable cause determination described in section 363.14, Jackson had 45 days from his receipt of the letter to file his MHRA claims. According to Minnesota law, Jackson was bound to commence his lawsuit on or before October 3, 2001. Because the lawsuit was not filed until October 18, 2001, it is untimely as to the MHRA claims. Those claims are dismissed.

**C. Title VII Claims**

1. Discrimination

Jackson's employment discrimination claims under Title VII are analyzed using the familiar burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Jackson v. Mo. Pac. R.R. Co., 803 F.2d 401, 406-07 (8th Cir. 1986). Under that analysis, a plaintiff in a discrimination claim bears the burden of establishing a prima

facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Specifically, in this case Jackson must establish that: (1) he is a member of a protected group; (2) he was meeting the legitimate expectations of Flint Ink; (3) he suffered an adverse employment action; and (4) Flint Ink did not take similar actions against employees who were not members of the protected class. See Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000). There is no dispute that Jackson has met his burden with respect to the first and third elements of his prima facie case.

If Jackson establishes a prima facie case of discrimination, Flint Ink must rebut that showing by presenting evidence of a legitimate, non-discriminatory reason for Jackson's termination. Coffman v. Tracker Marine, 141 F.3d 1241, 1245 (8th Cir. 1998). If Flint Ink can make this showing, Jackson must then prove that the reasons offered by Flint Ink are pretextual and that illegal discrimination was a "motivating reason" for Flint Ink's actions. Id.

a. Qualifications

Flint Ink contends that Jackson has failed to establish his prima facie case because he cannot show that he was meeting Flint Ink's legitimate expectations. According to Flint Ink, Jackson's history of performance problems proves that his performance was below expectations.. Jackson disputes Flint Ink's argument by claiming that many of the warnings he received were illegitimate. Jackson argues that these warnings were a result of his

supervisors' alleged racism, and thus cannot be evidence that he failed to meet legitimate expectations.

Jackson offers no evidence aside from bald speculation to support his argument that the warnings he received were illegitimate. He alleges that Flint Ink's decision to re-hire him is evidence that he was qualified for his position. The issue, however, is not whether Jackson could physically perform the duties of his job but whether there is evidence that Jackson could perform the job in a satisfactory manner. See Crawford, 218 F.3d at 918. There is ample evidence that he could not, in the form of the numerous warnings he received and the fact that he was fired three times for his performance problems. Flint Ink's decision to re-hire Jackson is merely a reflection of the company's willingness to give him a second, and a third, chance. The fact that Jackson continued to have disciplinary problems after Flint Ink terminated and suspended him further indicates that he was not meeting Flint Ink's legitimate expectations.

b. Similarly situated employees

However, even if Jackson could establish that he met legitimate expectations, Flint Ink is entitled to summary judgment because Jackson has utterly failed to establish the fourth element of his prima facie case, namely that employees who were not members of the protected class were treated differently than he was. Jackson argues that he "was singled out by his supervisors and terminated for alleged attendance and abuse of time violations." (Pl.'s Opp'n Mem. at 16.) The implication of this statement is that no other employee received similar reprimands for similar behavior. However, he offers no citation to any deposition,

affidavit, or any other piece of evidence to buttress his contention. Nor does he come forward with names of any other employees who were allegedly treated differently. It is Jackson's burden to establish the elements of a prima facie case and he has failed to meet his burden.

A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Although the Eighth Circuit has cautioned that summary judgment should be sparingly granted in employment discrimination cases, Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994), in this case there is no dispute of any material fact on the fourth element of Jackson's prima facie case. He has come forward with no evidence that white employees with similar employment histories were treated differently than he was, or that black employees were the only employees ever reprimanded for similar conduct. Indeed, he has offered no evidence whatsoever about Flint Ink's treatment of other employees. Flint Ink is entitled to summary judgment on Jackson's Title VII discrimination claim.

2. Retaliation

Title VII makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this title [42 U.S.C. §§ 2000e-2000e-17], or because he has made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing under this title [42 U.S.C. §§ 2000e-2000e-17]." 42 U.S.C. § 2000e-3. To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that he engaged in a statutorily protected activity, that he suffered an adverse employment action, and that there was a causal connection between the adverse employment action and the protected activity. Stevens v. St. Louis Univ. Med. Ctr., 97 F.3d 268, 270 (8th Cir. 1996); see also Coffman, 141 F.3d at 1245. If Jackson can establish a prima facie case, the Court should apply the same burden-shifting analysis from McDonnell Douglas discussed above with reference to his discrimination claims. See Smith v. Riceland Foods, Inc., 151 F.3d 813, 818 (8th Cir. 1998).

There is no dispute that Jackson has established the second element of his prima facie case. Flint Ink contends, however, that Jackson has failed to demonstrate that he engaged in any statutorily protected activity. In the alternative, Flint Hills asserts that Jackson cannot show a causal connection between his termination and any protected activity.

a. Protected activity

Jackson argues that he "did in fact engage in statutorily protected conduct" because he complained to his supervisor, Lawrence Stordahl, several times about Stordahl's alleged racism. (Pl.'s Opp'n Mem. at 26.) In support of this, Jackson cites to Stordahl's deposition, in which he testified that Jackson accused him of discrimination during one or two meetings at which reprimands were discussed, and that during the arbitration Jackson accused Stordahl of calling Jackson a "nigger." (Stordahl Dep. at 89.) Whether a complaint to a person about

that person's own alleged racial discrimination constitutes protected activity is an open question. Jackson has no other evidence that he ever complained to Stordahl's supervisor about Stordahl's alleged comments, nor does point to any evidence that he complained to anyone else about other alleged discrimination. However, taking the evidence in the light most favorable to Jackson and giving him the benefit of all reasonable inferences, the Court finds that the complaints to Stordahl about Stordahl's own behavior could constitute protected activity. Jackson has satisfied this element of his prima facie case of retaliation.

b. Causal connection

Even if Jackson's complaints to Stordahl are protected activity, however, Jackson has failed to establish the requisite causal connection between those complaints and his termination. Jackson's charge of discrimination to the MDHR contends that he complained to Flint Ink about racial harassment and discrimination, "the last time in March of 1999." (Hedican Aff. Ex. 45.) In his memorandum, Jackson asserts that he tried to complain to the plant manager, Frank Schreiber, about racial graffiti on June 4, 1999. Jackson argues that because the June 4 complaint is close in time to the July 9 termination of his employment, he has established a causal connection between his complaints and termination. He does not explain why he failed to raise the June complaint in his charge of discrimination.

The Eighth Circuit has recognized that, while not dispositive, timing may be important in establishing causal connection. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 833 (8th Cir. 2002). However, where, as here, a plaintiff's other evidence of discriminatory retaliation

is sparse, the temporal proximity must be very close to allow an inference of retaliation. Id. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc); see also Kipp v. Mo. Highway & Transp. Comm'n, 280 F.3d 893, 897 (8th Cir. 2002) ("[A] 'mere coincidence of timing' can rarely be sufficient to establish a submissible case of retaliatory discharge.").

Jackson's only evidence of a causal connection is the proximity between his alleged complaint on June 4 and his termination on July 9. Where there is no other evidence of retaliation, a delay of even one month between the conduct and the adverse action is too long to establish a causal connection. See, e.g., Gagnon v. Sprint Corp., 284 F.3d 839, 851, 852 (8th Cir. 2002) (one month's time between response to EEOC claim and adverse action did not establish causation). Absent other evidence, the one-month delay between Jackson's last alleged complaint and his termination does not establish the causation element of his prima facie case.

Moreover, the fact that Jackson received other reprimands between his alleged complaint on June 4 and his termination on July 9 negates any inference of retaliation that the temporal proximity might otherwise have given. See Horrocks v. Mech. Breakdown Protection, Inc., No. 01-2283, 32 Fed. Appx. 159, 162, 2002 WL 362938, at *1 (8th Cir. Mar. 8, 2002). Similarly, the fact that Flint Ink began to document problems with Jackson's attendance and performance long before he ever complained of racially discriminatory

conduct rebuts the alleged retaliatory inference from the temporal proximity. See Smith v. Ashland, Inc., 250 F.3d 1167, 1174 (8th Cir. 2001). Jackson has failed to establish his prima facie case of retaliation and his claim is dismissed.

3. Hostile Work Environment

In order to prove a claim of a racially hostile work environment, Jackson must show that: (1) he belongs to a protected class; (2) he was subject to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment affected a term, condition, or privilege of his employment; and (5) his employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action. See Noble v. Monsanto Co., 973 F. Supp. 849, 854 (S.D. Iowa 1997) (setting out prima facie case in context of sexually hostile work environment).

Jackson has met his burden with respect to the first three elements above. To satisfy the fourth element, Jackson must establish that the harassment he alleges was "so severe or pervasive as to alter the conditions of [his] employment and create an abusive working environment." Faragher v. Boca Raton, 524 U.S. 775, 786 (1998) (quotations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1158 (8th Cir. 1999) (quoting Faragher, 524 U.S. at 788).

Jackson contends that he has established that the harassment was severe or pervasive. He alleges that his co-workers wrote graffiti about him "all over the facility," (Pl.'s Opp'n Mem. at 23), spit on him, and called him racially derogatory names, among other conduct. Once again, however, much of the evidence to which he cites does not support his claims. Flint Ink provides the Court with citations to the portions of Jackson's deposition in which he discusses the allegedly hostile work environment. An analysis of Jackson's statements reveals that whatever harassment Jackson experienced does not rise to the level of severe or pervasive harassment required to make out a claim under Title VII.

Jackson testified at his deposition that he had seen "about ten" instances of graffiti during his tenure at Flint Ink. (Jackson Dep. at 169.) Many of these instances, however, were benign graffiti with no racial overtones. (Id. at 169-70 (graffiti saying "dumb ass" and "Herman slept here but now he gone").) Jackson recalled only two specific instances of racial graffiti. (Id. at 170-71.) Further, Jackson recalled only two instances of supervisors using racially derogatory names, (id. at 200-03), and could recall only a handful of instances when co-workers made racially offensive remarks, (id. at 205-16). Jackson also described one incident in which a co-worker allegedly spit on him. (Id. at 135-36.)

Even taking the evidence in the light most favorable to Jackson, he has failed to show that the harassment at Flint Ink was "so severe or pervasive as to alter the conditions of [his] employment and create an abusive working environment." Faragher, 524 U.S. at 786. His hostile work environment claim fails as a matter of law.

**CONCLUSION**

Plaintiff's claims under the MHRA are untimely, and he has failed to prove his prima facie case with respect to his claims under Title VII. Accordingly, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Clerk Doc. No. 30) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 7, 2003

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*